UNITED STATES COURT
OF INTERNATIONAL TRADE

| | |
|---|---|
| GREEN FARMS SEAFOOD JOINT STOCK COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                    Defendant. | **Court No. 22-00092** |

## COMPLAINT

Plaintiff, Green Farms Seafood Joint Stock Company ("Green Farms" or "Plaintiff"), by and through its attorneys, alleges and states as follows:

## ADMINISTRATIVE DETERMINATION CONTESTED

1. This action is an appeal from the *Final Results* issued by the United States Department of Commerce ("Commerce" or "Department") in the seventeenth administrative review ("AR 17") of the antidumping ("AD") order on certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"). The contested AR 17 *Final Results* cover entries of subject frozen fish fillets from Vietnam during the period of review ("POR") from August 1, 2019 through July 31, 2020 ("POR17").

2. Commerce issued its contested AR17 *Final Results* on March 9, 2022 and published an official notice of same in the *Federal Register* on March 21, 2022. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020,* 87 Fed. Reg. 15,912 (Dep't Commerce March 21, 2022) ("*Final Results*").

3. Commerce's final determinations, findings, and conclusions are set out primarily in the March 9, 2022 "Issues and Decision Memorandum" for the *Final Results. See Certain*

*Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Memorandum from J. Maeder to Lisa W. Wang for the Final Results of the Seventeenth Antidumping Duty Administrative Review: 2019-2020,* (March 9, 2022) ("*Final Decision Memo*").

4. This action contests the Department's AR17 *Final Results.* Commerce improperly calculated Plaintiff Green Farm's "separate rate" based in part on a punitive "adverse facts available" ("AFA") rate improperly applied to a different exporter participating in the case. Commerce did so without legal justification or evidentiary support. Commerce's *Final Results* are therefore unsupported by substantial evidence and otherwise not in accordance with law.

## JURISDICTION

5. This action was commenced under sections 516a(a)(2)(A)(i)(I), 516a(a)(2)(B)(iii), and 516a(d) of the Tariff Act of 1930, to contest the *Final Results* issued by Commerce in the seventeenth administrative review of the AD order on certain frozen fish fillets from Vietnam. *See* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii); s*ee also* 19 U.S.C. § 1516a(d).

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1581(c), which provides that this Court has exclusive jurisdiction over civil actions commenced under section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), which provides that final determinations by Commerce are reviewable by this Court.

## STANDING

7. Plaintiff is a foreign exporter of subject merchandise and is therefore an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

8. Plaintiff was a respondent and actively participated in this case as such in the underlying AR17 review through submission of both factual information and legal arguments,

including submission of a case brief. Plaintiff was, therefore, one of the "parties to the proceeding" and it has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

9. Commerce published notice of the contested *Final Results* on March 21, 2022. *See Final Results*, 87 Fed. Reg. 15,912.

10. This action was commenced with the filing of the Summons on March 22, 2022, within 30 days after publication of the *Final Results*. Accordingly, this action was timely commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 28 U.S.C. §2636(c), and Rule 3 of the Rules of this Court.

11. This Complaint is filed within 30 days of the filing of the Summons in this action and is therefore timely under the statutorily-prescribed time limits set forth in 19 U.S.C.§ 1516a(a)(2)(A)(i)(I), and Rule 3 of the Rules of this Court.

## STATEMENT OF FACTS

12. On October 6, 2020, Commerce initiated the seventeenth administrative review of the AD order on certain frozen fish fillets from Vietnam. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 85 Fed. Reg. 63,081 (Dep't Commerce Oct. 6, 2020). Plaintiff Green Farms was individually named as one of several respondents subject to this review. *See id*. at 63,084.

13. On January 8, 2021, Commerce selected the two largest eligible exporters of subject merchandise (*i.e.* exporters other than Green Farms) as the "mandatory respondents" in this case. *See Memorandum to James Maeder from Shawn Thompson: Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review, 2019-2020; Certain Frozen Fish Fillets from Vietnam* (Dep't Commerce August 31, 2021) ("Preliminary Decision

3

*Memo*") at 3. Specifically, Commerce selected the following two exporters as mandatory respondents: (1) NTSF Seafoods Joint Stock Company ("NTSF"); and (2) East Sea Seafoods Joint Stock Company ("East Sea"). *See id*.

14. Although Green Farms was not selected as a "mandatory respondent," Commerce nonetheless considered Green Farms' eligibility for a "separate rate." *See id.* at 11-12. Commerce considers such non-selected respondents for eligibility for a "separate rate" in "non-market economy" ("NME") cases if they participate fully in the case and can show the absence of any "*de jure*" or "*de facto*" government control. *See id.* As a non-selected separate rate applicant, Green Farms was eligible to receive a new AD rate as part of this proceeding based on the AD rates calculated for the two participating mandatory respondents.

15. On November 5, 2020, Green Farms timely submitted its initial Separate Rate Certification ("SRC"), wherein it fully documented that it was entitled to a "separate rate" in this proceeding. *See* Green Farms Separate Rate Certification (Nov. 5, 2020).

16. On July 30, 2021, Green Farms submitted a supplemental "Separate Rate Application" ("SRA") to account for a change in ownership since the last time it had applied for and received a separate rate. *See* Green Farms Separate Rate Application (July 30 2021).

17. Wholly apart from Green Farms' efforts to obtain its separate rate, each of the two mandatory respondents (*i.e.*, East Sea and NTSF) also submitted Separate Rate Certifications ("SRC") as part of their status as mandatory respondents. *See Preliminary Decision Memo* at 2-4. NTSF submitted its SRC on October 30, 2020 and East Sea submitted its SRC on November 5, 2020. *See id*.

18. Thereafter, NTSF participated fully in the proceeding as a mandatory respondent and completed all AD questionnaires and supplemental questionnaires. *See id*. at 3. East Sea however, stopped participating as a mandatory respondent. *See id*. In fact, East Sea "suspended"

its participation and ultimately "cease{d} participation" in the case after submitting is initial SRC. *See Final Decision Memo* at 26.

19. On August 27, 2021, Commerce officially issued its *Preliminary Results* in this case (published in the Federal Register on September 10, 2021). *See Certain Frozen Fish Fillets from Vietnam: Preliminary Results of Antidumping Duty Administrative Review; 2019-2020*, 86 Fed. Reg. 50,698 (Dep't Commerce Sept. 10, 2021) ("*Preliminary Results*"). Commerce accepted Green Farms' separate rate application as adequate and determined that Green Farms was entitled to a separate rate. *See Preliminary Decision M*emo at 9-11.

20. Having determined Green Farms was entitled to a separate rate, Commerce next considered which rate to apply to Green Farms as its separate rate. *See id.* at 12. Because Green Farms was not selected as a "mandatory respondent", Commerce determined it was appropriate to calculate an "all-others" AD rate for Green Farms by averaging the individual AD rates of the two selected mandatory respondents (*i.e.,* NTSF and East Sea). *See id*. at 12.

21. Commerce had calculated an AD rate of "zero" for NTSF, which had cooperated fully and fully answered its SRC and all sections of the full AD questionnaire issued to mandatory respondents. *Preliminary Decision Memo* at 3-4, 12 and 22-24. Conversely, Commerce assigned a very high punitive AD rate of $3.87/kg to East Sea based on total "adverse" facts available (or "AFA"). *See id* at 8-9. Commerce assigned this adverse total AFA rate to East Sea because it ceased participation and failed to answer all AD questionnaires. *Id*. at 7-8.

22. Commerce took a "simple average" of these two different AD rates for NTSF and East Sea to derive an overall "average" AD rate as the new "separate rate" for Green Farms. *Preliminary Decision Memo* at 12. The separate rate assigned to Green Farms was therefore

5

$1.94/kg (*i.e.*, simple average of $0.0/kg and $3.87/kg). *See Preliminary Results*, 86 Fed. Reg. at 50,700. (This $1.94/kg rate assigned to Green Farms was equivalent to an AD rate of approximately 50%.)

23. On November 16, 2021, Green Farms filed a case brief challenging Commerce's preliminary decision to calculate a very high AD rate of $1.94/kg for Green Farms. Letter from Crowell & Moring to the Department Re: *AR17 Case Brief of Green Farms Joint Stock Company* (Nov. 16, 2021) ("*Green Farms Case Brief*").

24. Green Farms argued that Commerce wrongly included East Sea's very high punitive AD rate of $3.87/kg in the calculation of Green Farm's separate rate. Green Farms stated that Commerce should have based Green Farm's separate rate on the $0.0/kg AD rate calculated for NTSF, the sole fully participating mandatory respondent. *Id.* at 2-9. Green Farms explained that because East Sea ceased participating and withdrew from the case, Commerce should have denied East Sea's eligibility for its own separate rate. *See id.*

25. In other words, Commerce should have disqualified East Sea from obtaining its own AD rate in this proceeding, and it should not have calculated an AD rate for East Sea at all. Thus, with East Sea disqualified, Commerce should have then assigned Green Farms an AD rate of $0.0/kg based on NTSF's separate rate of $0.0/kg (as the sole participating mandatory respondent in the case eligible to receive an AD rate), consistent with its well-established practice. *See id.* at 4-6.

26. Green Farms also argued (in the alternative) that Commerce should not have otherwise relied on East Sea's punitive total AFA rate at all to derive Green Farm's separate rate because doing so is not reflective of economic reality or of Green Farms potential dumping, nor is it otherwise reasonable under the facts of this case. *See id.* at 11-19.

DCACTIVE-65776204.1

27. On March 9, 2022, Commerce issued its *Final Results*, rejecting all of Green Farms' arguments, and affirming its preliminary decision basing Green Farm's separate rate on an average of the NTSF rate of $0.0/kg and the East Sea total AFA rate of $3.87/kg. *See generally Final Decision Memo* at 24-31. Commerce concluded (1) it was appropriate to grant a separate rate to East Sea (rather than simply deny East Sea its separate rate) and (2) it was otherwise proper to rely on East Sea's total AFA rate as part of the average used to derive Green Farm's separate rate of $1.94/kg. *See id*.

28. The Department's *Final Decision Memo* justifies its decision to grant East Sea a separate rate based on its findings that East Sea submitted its initial "separate rate information" and portions of its full AD questionnaire. *See id*. at 26-27. Commerce concluded therefore that although East Sea had "cease{d} participation" in this proceeding, it had in fact provided enough information prior to doing so to qualify for a separate rate. *See id*.

29. Commerce next determined it was appropriate to use East Sea's total AFA rate of $3.87/kg as part of the calculation used to derive Green Farm's separate rate. *See id*. at 34-36. Commerce took a simple average of East Sea's total AFA rate of $3.87/kg and the $0.0/kg rate calculated for NTSF to derive the $1.94 /kg AD rate assigned to Green Farms. *See id*. Commerce explained that doing so in this instance is consistent with the "statutory directive" that it calculate the separate rate of non-selected respondents by simply averaging the rates assigned to mandatory respondents. *See id*.

## STATEMENT OF CLAIMS

Commerce's *Final Results* are unsupported by substantial evidence, arbitrary, unreasonable, and otherwise not in accordance with law as discussed below.

## COUNT ONE
### *(Unlawful Granting of Separate Rate to East Sea)*

30. Plaintiff incorporates paragraphs 1 through 29 as fully set forth herein.

31. Commerce unlawfully granted East Sea separate rate status and a separate rate in the *Final Results* (which it then wrongly used to calculate Green Farm's separate rate). The Department should have denied East Sea a separate rate.

32. The Department violated applicable legal requirements in granting East Sea a separate rate. In all "non-market economy" ("NME") cases, the Department presumes that all exporters such as East Sea "are subject to government control and, therefore, should be assigned a single AD margin." *See e.g. Preliminary Decision Memo* at 9. Exporters such as East Sea can only qualify for a separate rate by affirmatively rebutting this presumption with positive evidence "showing an absence of central government control, both in law and in fact, with respect to exports." *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997).

33. East Sea failed to satisfy the threshold legal requirements necessary to rebut the presumption and demonstrate eligibility for a separate rate. Although East Sea submitted an initial Separate Rate Certification ("SRC") and portions of its mandatory respondent AD questionnaire response, it nevertheless failed to provide a full and complete response to all sections of Commerce's AD questionnaires. *See Final Decision Memo* at 25-30. Indeed, East Sea actually ceased participating and essentially withdrew from the case. *See id.* at 26.

34. Commerce's decision granting East Sea a separate rate under these circumstances was contrary to law. Separate rate applicants must respond to <u>all parts of all questionnaires</u> to be eligible for a separate rate, and not just the SRC itself. *See e.g. Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 63,081, 63,083 (Dep't of Commerce

DCACTIVE-65776204.1

Oct. 6, 2020) (emphasis added). East Sea failed to respond to all parts of the AD questionnaire, and therefore was not eligible for a separate rate as a matter of law.

35. Moreover, Commerce's decision granting East Sea a separate rate is contrary to its normal practice where it routinely denies separate rate status if separate rate applicants fail to respond to all parts of all AD questionnaires. *See e.g., Decision Memorandum for the Final Results of Sixteenth Administrative Review of Fish Fillets from Vietnam,* (June 25, 2021) at 39-42 (denying separate rate to DOTA seafoods for failure to complete all parts of AD questionnaire); *Decision Memorandum for the Preliminary Determination of Dumping in Walk-Behind-Snow Throwers and Parts from China* (Oct. 26, 2021) at 3 and 12-13; *Final Issues and Decision Memorandum for Final Affirmative Determination of Dumping in Sodium Gluconate, Gluconic Acid, and Derivatives from China* (Sept. 17, 2018) ("*Sodium Gluconate from China Final I&D Memo*") at 4. Nor has Commerce otherwise explained its departure in this case from its prior practice.

36. Thus, the Department's decision granting East Sea a separate rate was contrary to law, arbitrary, and otherwise unreasonable. Commerce should have denied East Sea a separate rate and relied only on NTSF's separate rate (as the only fully participating mandatory respondent eligible for a separate rate) to calculate Green Farm's separate rate.

**COUNT TWO**
*(Lack of Substantial Evidence Supporting East Sea Separate Rate Status)*

37. Plaintiff incorporates paragraphs 1 through 36 as fully set forth herein.

38. Apart from the legal deficiencies in granting East Sea's separate rate status (as discussed above), the Department's decision granting East Sea a separate rate is also unsupported by substantial evidence. The Department determined that East Sea was eligible for a separate rate because it determined East Sea provided all SRC information required. *Final Decision Memo* at

9

27. Commerce concluded that it "found no basis to determine that the separate rate information submitted was not reliable." *Id*.

39. The Department's factual findings on these issues are erroneous and otherwise unsupported by substantial evidence. The record reflects numerous deficiencies in East Sea's separate rate status. East Sea failed to provide all information requested in all parts of all AD questionnaires, including its Section A response and Section D response. There were multiple other deficiencies in East Sea's initial SRC, including its failure to submit a more fulsome separate rate "application" (rather than the abbreviated "certification"), and its failure to disclose fully its relationship with other Vietnamese processors of subject merchandise. *See e.g*. Letter from Cassidy Levy Kent to the Department Re: *Comments and Factual Information Regarding East Sea's Section A Questionnaire Response* (Feb. 26, 2021) at 3-9. Commerce failed to adequately address, explain, or investigate these deficiencies.

40. Moreover, East Sea rendered its factual information unreliable by ceasing all participation and essentially withdrawing from this case. *See Final Decision Memo* at 26. Commerce routinely rejects separate rate status where the separate rate applicant withdraws from the case. *See e.g.*, *Sodium Gluconate from China Final I&D Memo* at 4. East Sea's withdrawal from this case negates whatever separate rate information it provided.

41. Thus, Commerce's findings that East Sea rebutted the presumption of government control and was entitled to a separate rate are unsupported by substantial evidence and contrary to law.

### COUNT THREE
*(Unlawful and unreasonable Calculation of Green Farms Separate Rate using East Sea AFA Rate)*

42. Plaintiffs incorporate paragraphs 1 through 41 as fully set forth herein.

10

43. Not only did Commerce wrongly confer a separate rate upon East Sea (for all the reasons discussed above), Commerce also wrongly relied upon East Sea's separate rate to calculate Green Farm's separate rate. *See Final Decision Memo* at 24-31. Doing so was highly prejudicial to Green farms.

44. Commerce's actions in doing so are arbitrary, unreasonable, unsupported by substantial evidence, and otherwise unlawful. While Commerce normally calculates the "separate rate" of non-selected NME respondents by simply averaging the dumping margins for exporters and producers individually investigated, Commerce may not do so under certain circumstances including where all rates for all individually examined respondents are zero, *de minimis*, or based upon "facts available." *See* 19 USC §§ 1673d(c)(5) and 1677e.

45. Commerce may not simply weight-average the AD rates in this context if doing so "results in an average that would not be reasonably reflective of potential dumping margins for non-selected exporters or producers." Statement of Administrative Action, H.R. Doc. No. 103-316 (1994) at 873, reprinted in 1994 U.S.C.C.A.N. 4040 ("SAA"). Further, Commerce's methodology for determining separate rates for cooperating respondents must be reasonable and must "bear some relationship to their actual dumping margins." *See Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1362-63 (Court Int'l Trade 2014). Commerce has a "duty to verify that the resulting rate reflects economic reality." *Id*.

46. Commerce has not complied with these and other legal requirements in calculating Green Farm's separate rate in this case, nor did it otherwise assess all the evidence presented on this issue, including the historical rates calculated in the most recently completed and contemporaneous segments of these proceedings. *See Green Farms Case Brief* at 11-20.

47. Thus, Commerce's actions in calculating Green Farms separate rate were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise unlawful.

## COUNT FOUR
*(East Sea Affiliations and Separate Rate/AFA Issues)*

48. Plaintiffs incorporate paragraphs 1 through 47 as fully set forth herein.

49. Other questions related to East Sea's separate rate status and AFA findings were raised during the proceeding. *See e.g.* Letter from Cassidy Levy Kent to the Department Re: *Case Brief of Catfish Farmers of America* (Nov. 16, 2021) at 34-35. This included East Sea's "failure to address inquiries" about potential affiliates. *See id.* at 34.

50. Commerce did not adequately address this issue in the *Final Results*, including the impact of this issue on its decision granting East Sea a separate rate and on its application of AFA to East Sea and potential affiliates. Commerce must thoroughly analyze and address this issue as part of any remand.

51. Commerce's actions on this issue were arbitrary, unreasonable, unsupported by substantial evidence, and otherwise unlawful.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Hold that Commerce's *Final Results* are not supported by substantial evidence on the record and otherwise not in accordance with law;

2. Remand this matter to Commerce for disposition consistent with the final opinion and order of this Court; and

DCACTIVE-65776204.1

3.    Provide such further relief as this Court deems just and proper.

                                      Respectfully submitted,

                                      /s/ Robert L. LaFrankie

                                      Robert L. LaFrankie

                                      CROWELL & MORING LLP
                                      1001 Pennsylvania Avenue, NW
                                      Washington, DC 20004

                                      *Counsel to Plaintiff Green Farms*

Dated:  April 20, 2022

## CERTIFICATE OF SERVICE

      Pursuant to Rule 3(f) of the Court of International Trade, I, Robert L. LaFrankie, hereby certify that I have caused copies of the Complaint, in *Green Farms Seafood Joint Stock Company v. United States*, Case No. 22-00092 be served upon the parties in the administrative proceeding, by U.S. certified mail, return receipt requested and/or e-mail.

**UPON THE UNITED STATES**

Kara M. Westercamp
Trial Attorney
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
P.O. box 480
Ben Franklin Station
Washington, DC 20044
Email: Kara.M.Westercamp@usdoj.gov

Chad Readler
Acting Assistant Attorney General
International Trade Field Office
U.S. Department of Justice
National Courts Branch, Room 346
26 Federal Plaza
New York, NY 10278

Jeanne Davidson
Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Matthew J. McConkey, Esq.
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006-1101
mmcconkey@mayerbrown.com

**UPON THE DEPARTMENT OF COMMERCE**

Hendricks Valenzuela
Attorney
Office of the Chief Counsel
   For Trade Enforcement & Compliance
U.S. Department of Commerce
1401 Constitution Avenue, N.W.
Washington DC 20230
Email: Hendricks.Valenzuela@trade.gov

Michelle O. McClelland
Assistant General Counsel for Administration and Transaction, performing the non-exclusive duties of the General Counsel
U.S. Department of Commerce
Mail Stop 5875 HCHB
14th and Constitution Avenue,
Washington DC 20230

Robert Heilferty
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

Robert G. Gosselink, Esq.
**TRADE PACIFIC PLLC**
700 Pennsylvania Ave., SE, Suite 500
Washington, DC 20003
rgosselink@tradepacificlaw.com

| | |
|---|---|
| James R. Cannon, Jr., Esq.<br>**CASSIDY LEVY KENT (USA) LLP**<br>900 19th Street, N.W., Suite 400<br>Washington, DC 20006<br>jcannon@cassidylevy.com | Andrew B. Schroth, Esq.<br>**GRUNFELD DESIDERIO LEBOWITZ SILVERMAN KLESTADT, LLP**<br>1201 New York Avenue NW, Suite 650<br>Washington DC 20005<br>aschroth@gdlsk.com |
| Nazak Nikakhtar, Esq.<br>**Wiley Rein LLP**<br>2050 M Street, NW<br>Washington, DC 20036  Email:<br>nnikakhtar@wiley.law | Luong Kim Thanh<br>TRAV Trade Remedies Authority of Vietnam 25 Ngo Quyen Street, Hoan Kiem District<br>Ha Noi, Viet Nam<br>thanhlk@moit.gov.vn |
| Nguyen Tien Hung<br>Representative of C.P. Vietnam Corporation<br>IDVN Lawyers 21st FL.<br>Capital Tower, 109 Tran Hung Dao Street<br>Hoan Kiem District<br>Hanoi, Vietnam<br>Email: tienhung@idvn.com.vn | Linh Hoang<br>East Sea Seafoods LLC<br>East Sea Seafoods, LLC<br>19D Tran Hung Dao Ward My Quy<br>Long Xuyen City<br>An Giang, Vietnam<br>Email: sale1@eastseaseafoods.com |

Date:  April 20, 2022

*/s/ Robert L. LaFrankie*
Robert L. LaFrankie