# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **GREEN FARMS SEAFOOD JOINT STOCK COMPANY,**<br><br>        **Plaintiffs,**<br><br>   v.<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>   and<br><br>**CATFISH FARMERS OF AMERICA,** *et al.*,<br><br>        **Defendant-Intervenors.** |

**Before: Hon. M. Miller Baker, Judge**

**Court No. 22-00092**

## DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF THE REMAND DETERMINATION

**Nazak Nikakhtar, Esq.**
**Maureen E. Thorson, Esq.**
**Stephanie M. Bell, Esq.**
**Tatiana Sainati, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202)719-7000**

***Counsel to the Catfish Farmers of America, et al.***

**Dated: February 10, 2025**

Ct. No. 22-00092

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

III.  ARGUMENT ...................................................................... 6

    A.    The Court Has Already Considered and Rejected Green Farms' Arguments Regarding ESS's Separate Rate Eligibility ........................................ 8

    B.    Post-*Bestpak* Changes Reinforce Commerce's Separate-Rate Determination for Green Farms .................. 11

IV.   CONCLUSION .................................................................. 15

Ct. No. 22-00092

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bosun Tools Co., Ltd. v. United States*,
    2022 U.S. App. LEXIS 624 (Fed. Cir. Jan. 10, 2022) ................... 12, 13

*Gallant Ocean (Thailand) Co., Ltd. v. United States*,
    602 F. 3d 1319 (Fed. Cir. 2010) ..................................................... 13, 14

*MacLean-Fogg Co. v. United States*,
    100 F.Supp.3d 1349 (Ct. Int'l Trade 2015) ......................................... 7

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
    716 F. 3d 1370 (Fed. Cir. 2013) ................................................. *passim*

**Statutes**

19 U.S.C. § 1673d(c)(5)(B) ........................................................... 14

19 U.S.C. § 1677e(d)(3) ............................................................... 14

**Administrative Materials**

*Certain Frozen Fish Fillets From the Socialist Republic of*
    *Vietnam*, 86 Fed. Reg. 36,102 (Dep't Commerce
    July 8, 2021) ......................................................................... 11

**Other Authorities**

Federal Rule of Appellate Procedure 32.1 .............................................. 12

Trade Preferences Extension Act of 2015, Pub. L. No. 114-27,
    Title V, § 502 (2015) ............................................................... 14

Uruguay Round Agreements Act, Statement of
    Administrative Action, H.R. Doc. No. 103-316, vol. 1
    (1994), *reprinted in* 1994 U.S.C.C.A.N 4040 ........................................ 13

**Ct. No. 22-00092**

# **GLOSSARY**

**AFA**
   Adverse Inference

**Commerce**
   Department of Commerce

**Vietnam**
   Socialist Republic of Vietnam

Ct. No. 22-00092

## I.  <u>INTRODUCTION</u>

On behalf of the Catfish Farmers of America and individual U.S.

catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a

Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC

d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish,

Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride

of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively,

"CFA"), we respectfully submit the following comments in support of

certain aspects of the October 18, 2024 remand results filed by the U.S.

Department of Commerce ("Commerce") in this action. *See* Final

Results of Redetermination Pursuant to Court Remand, *Green Farms*

*Seafood Joint Stock Company v. United States*, Ct. No. 22-00092;

*Catfish Farmers of America v. United States*, Ct. No. 22-00125, Slip Op.

24-46 (CIT Apr. 17, 2024) (Oct. 18, 2024), ECF No. 57-58, C.R.R. 4,

P.R.R. 6, Appx18509-18589 ("Final Remand Results").

To avoid repetition, these comments do not address all arguments

raised by Plaintiff Green Farms Seafood Joint Stock Company ("Green

Farms"). Rather, CFA adopts the arguments of Defendant, the United

States, in response to the issues raised by Green Farms. Pl.'s Comments

in Opposition to Remand (Dec. 16, 2024), ECF No. 64 ("Green Farms'
Comments"). CFA submits these comments to add certain points to
Commerce's analysis, and the failure to address any particular
argument asserted in Green Farms' Comments should not be construed
as acceptance of Green Farms' positions.

## II.  <u>BACKGROUND</u>

The Final Remand Results arise from litigation challenging the
final results of an administrative review of the antidumping duty order
on certain frozen fish fillets for *pangasius hypophthalmus* from the
Socialist Republic of Vietnam ("Vietnam") covering the period of review
from August 1, 2019, through July 31, 2020. *See, e.g., Green Farms
Seafood Joint Stock Company v. United States,* Ct. No. 22-00092 and
*Catfish Farmers of America, et al. v. United States,* Ct. No. 21-00125,
slip op. 24-46 (Ct. Int'l Trade Apr. 17, 2024), ECF No. 52 ("Slip Op. 24-
46").

In Slip Op. 24-46, the Court considered Commerce's determination
that three Vietnamese companies were independent from the
Vietnamese government and eligible for separate rates: NTSF Seafoods
Joint Stock Company ("NTSF"), East Sea Seafoods Joint Stock

Ct. No. 22-00092

Company ("ESS"), and Green Farms. *Id.* at 4. NTSF and ESS were
selected as mandatory respondents, and Commerce individually
investigated both. *Id.* After establishing its eligibility for a separate
rate, ESS ceased cooperating in the review. *Id.* Commerce applied facts
otherwise available with an adverse inference ("AFA"), resulting in a
dumping margin of $3.87 per kilogram for the company. *Id.* Commerce
did not individually investigate Green Farms. *Id.* Instead, Commerce
calculated Green Farms' separate rate by averaging NTSF's margin
(which was zero) and ESS's margin for a $1.94 per kilogram rate. *Id.*
Green Farms appealed, arguing that (1) ESS was not eligible for a
separate rate because it stopped participating in the review; and (2)
ESS's AFA-based margin should not be used in determining Green
Farms' margin. *Id.* at 6-7.

Regarding the first issue, Green Farms specifically argued that
because ESS failed to answer all parts of Commerce's questionnaire for
mandatory respondents, ESS was no longer eligible for a separate rate.
*Id.* at 8. Commerce rejected this argument. In so doing, Commerce
emphasized that ESS's non-cooperation related specifically to
information necessary to calculate the appropriate dumping margin,

but not to information regarding ESS's separate rate reporting. *See* Defendant's Response in Opp'n to Pl.'s Mot. for J. on the Agency R. (Apr. 20, 2023), ECF No. 44 at 50-51 ("DOJ Final Response Brief"). This distinction was critical, because "independence from government control"—which governs separate rate eligibility—"is a separate question from analysis of sales and cost data." Slip Op. 24-46 at 8. The Court agreed, explaining that it "has consistently held that it is unreasonable for Commerce to impute the unreliability of a company's questionnaire responses and submissions concerning its factors of production and/or U.S. sales to its separate-rate responses when there is no evidence on the record indicating that the latter were false, incomplete, or otherwise deficient." *Id.*

The Court further considered Commerce's argument that it was reasonable in the circumstances of this case to assign ESS a separate rate "because the Vietnam-wide margin is lower than the adverse-inference tariff." *Id.* at 9. Commerce explained that, in this context, "denying {ESS} a separate rate would benefit the uncooperative company and allow respondents to manipulate the investigation." *Id.* Such an outcome would run afoul of the statutory purpose of the AFA

Ct. No. 22-00092

rate, which is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Id.* at 9-10. The Court accepted this rationale, explaining that compliance with the statute "and preventing respondents from benefiting from a lack of cooperation are valid reasons for a change in practice" if there had, indeed, been such a change. *Id.* at 10. The Court accordingly "reject{ed} Green Farms's argument that Commerce erred as a matter of law in granting {ESS} a separate rate." *Id.* The Court remanded, however, because Commerce failed to "show its work" in establishing that ESS is separate from the Vietnamese government. *Id.* at 13-14. The Court explained that remand would afford Commerce "the opportunity to offer a fuller explanation" for its reasoning on this point. *Id.* at 14 (internal quotations removed).

Regarding the second issue, the Court accepted that Commerce "correctly followed the statutory command . . . by averaging {NTSF's} zero margin with {ESS's} adverse-inference tariff," to determine Green Farms' separate rate. *Id.* at 16-17. Nevertheless, the Court remanded concluding that, under *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F. 3d 1370, 1378 (Fed. Cir. 2013) ("*Bestpak*"),

5

Commerce must show that the tariff rate "reflect{ed Green Farms'} economic reality." *Id.* at 17-18 (internal quotations omitted).

On remand, Commerce provided the fuller explanation demanded by the Court for establishing ESS' eligibility for a separate rate by evaluating the record evidence for each *de jure* and *de facto* criteria used to determine whether a company operates subject to government control in its export functions. Final Remand Results at 7-11, Appx18515-18519. Commerce also demonstrated that the rate assigned to Green Farms reflected Green Farms' economic reality by comparing "the price of sale covered by the documentation contained in Green Farms' {sic} separate rate application with the price of a sale made by ESS during the POR, as well as the pricing of NTSF." *Id.* at 12, Appx18520 (internal citations omitted). The comparison demonstrates "that the dumping margin assigned to Green Farms is reasonably reflective of its commercial behavior." *Id.* Green Farms appeals both conclusions.

## III.  <u>ARGUMENT</u>

CFA agrees with Commerce that the Court should, and will, sustain remand results where they comport with the remand order, are

supported by substantial evidence, and otherwise accord with law.
Defendant's Response in Support of the Remand Redetermination (Jan.
22, 2025), ECF No. 68 at 12-13 (quoting *MacLean-Fogg Co. v. United
States*, 100 F.Supp.3d 1349, 1355 (Ct. Int'l Trade 2015)). Here, the
Court should uphold Commerce's determination that ESS is eligible for
a separate rate. The Court remanded Commerce's separate rate
decision not for any inconsistency with law, but for further explanation
of how the record regarding ESS's operations during the review period
corresponded to each factor that the agency assesses in determining
whether a company operates free from government control. Commerce's
Final Remand Results provide the required information, and ESS's
arguments to the contrary simply reiterate positions already considered
and rejected by the Court.

The Court should also uphold Commerce's decision to assign
Green Farms a separate $1.94/kg rate. The agency on remand has
further explained and supported this decision. Further, the Court's
initial concerns regarding this rate were largely premised on *Bestpak*.
But CFA respectfully submits that subsequent legal developments call

*Bestpak*'s relevance into question and further support the agency's original and remand determinations.

### A.    The Court Has Already Considered and Rejected Green Farms' Arguments Regarding ESS's Separate Rate Eligibility

The Court remanded on the question of ESS's eligibility for a separate rate on the narrow ground that Commerce had yet to explain how the information submitted by ESS supported the conclusion that the company had demonstrated freedom from government control, with respect to each of the *de jure* and *de facto* factors that Commerce typically considers. Slip-Op 24-46 at 12-14. There is no dispute that, on remand, Commerce complied with this instruction. *See* Green Farms' Comments at 7 (acknowledging that Commerce "drafted six pages of additional explanation" on this point as well as "five more pages addressing Green Farms' comments").

Green Farms nevertheless insists that Commerce erred in imposing a separate rate on ESS because ESS quit the case and the agency's "normal practice is to deny" separate rate status in these circumstances. *Id.* at 8. Green Farms ignores, however, key aspects of the Court's remand order. As the Court has already explained, "even if

{Commerce} has the policy that Green Farms ascribes to it,"—namely, a policy of denying separate rate status to an entity that forsakes a review midway through—Commerce "can deviate from its practices if it shows that there are good reasons for doing so." Slip Op. 24-46 at 9 (internal quotations omitted). The Court further concluded that such "good reasons" existed in the circumstances of this case. *Id.* at 9-10.

Specifically, the Court accepted Commerce's reasoning that "denying {ESS} a separate rate would benefit the uncooperative company and allow {ESS} to manipulate the investigation" because, here, "the Vietnam-wide margin is lower than the adverse-inference tariff . . ." *Id.* at 9. Such an outcome directly defies the statutory mandate that authorizes adverse inference rates "to ensure that {a} party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Id.* (internal quotations omitted). And, as the Court concluded, "{c}omplying with the {statute} and preventing respondents from benefiting from a lack of cooperation are valid reasons for a change in practice." *Id.* at 10. Thus, even if Green Farms were correct that Commerce ordinarily rejects a separate rate application when the applicant quits the case, that is irrelevant because Commerce

has already sufficiently explained the basis for departing from any such practice here.

Green Farms responds that "this argument lacks merit" for two reasons. First, Green Farms asserts that the "country-wide rate . . . is already prohibitively high," and there is "no practical difference for {ESS} as between the total AFA rate of $3.87/kg and the Vietnam-wide rate of $2.39/kg." Green Farms' Comments at 12. But the statutory purpose behind imposing adverse inferences to non-cooperating respondents is to prevent parties from benefiting from their non-cooperation. The act provides no exception for situations in which the AFA rate and the country-wide rate are both high. And clearly there is a practical difference in the rates – if there was not, Green Farms would have no reason to expend resources arguing for ESS to receive the lower one.

Second, Green Farms asserts that Commerce's actions in this administrative review "are directly contrary to its actions in the AR16 proceeding," because, in that case, Commerce denied separate rate status to a non-cooperating mandatory respondent and applied the lower Vietnam-wide rate instead of the higher AFA rate. *Id.* at 13.

Green Farms overlooks, however, that in AR16, the respondent "failed to respond to {Commerce's} supplemental request for information regarding its separate rate status . . ." Issues and Decision Memorandum accompanying *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 86 Fed. Reg. 36,102 (Dep't Commerce July 8, 2021) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2018-2019) at 40. Commerce in that review accordingly concluded that the company had not demonstrated eligibility for a separate rate and, rather than apply AFA, simply treated it as government controlled. *Id.* Here, in contrast, ESS did provide responses to requests for information regarding its separate rate status, confirming its eligibility for a separate rate. Because Commerce complied with the Court's direction to "show its work" regarding ESS's separate rate eligibility, and because Commerce has explained the basis for imposing the AFA rate on ESS, the Court should uphold these facets of the remand results. *See* Slip Op. 24-46 at 12-13.

### B. Post-*Bestpak* Changes Reinforce Commerce's Separate-Rate Determination for Green Farms

As the Court noted, "Commerce correctly followed the statutory command and the S{tatement of} A{dministrative} A{ction ("SAA")} by

averaging NTSF's zero rate and {ESS's} adverse-inference tariff." *Id.* at 16-17. The Court remanded, however, on grounds that Commerce failed to show that the margin reflected Green Farms' economic reality. *Id.* at 18. In so doing, the Court relied on the Federal Circuit's decision in *Bestpak*. *See id.* at 17-18. But CFA respectfully submits that developments post *Bestpak* call that decision's relevance into question and reinforce Commerce's original and remand determinations.

In *Bosun Tools Co., Ltd. v. United States*, the Federal Circuit considered a separate rate equal to the simple average of the China-wide rate applied to a mandatory respondent as an adverse inference and the zero margin calculated for the remaining mandatory respondent. *Bosun Tools Co., Ltd. v. United States*, 2022 U.S. App. LEXIS 624, at *6 (Fed. Cir. Jan. 10, 2022).[1] The Federal Circuit concluded it was reasonable for Commerce to base the separate rate partially on a mandatory respondent's adverse margin, and appeared to find it insignificant that the relevant mandatory respondent received a rate equal to that assigned to the China-wide entity. *Id.* at *6-11. In

---

[1]    *Bosun* was issued as a non-precedential opinion. However, as indicated by the Committee Notes on Federal Rule of Appellate Procedure 32.1, such opinions may be cited for their persuasive value.

doing so, the Federal Circuit glossed and distinguished its 2013 *Bestpak* decision, in which it had remanded Commerce's determination based on a simple average of the AFA country-wide rate and a zero margin. *Id.* at *10-11.

*Bosun* explained that, in the years since *Bestpak*, the Federal Circuit has clarified that mandatory respondents are presumed, under the statute, representative of non-investigated companies, and has otherwise confirmed that the agency is meant to determine the separate rate via the expected method set out in the SAA, which requires averaging the rates for the mandatory respondents. *Id.* at *9-11. Here, consistent with the expected method, Commerce assigned Green Farms a $1.94 rate that reflects the margins for both mandatory respondents. *See, e.g.*, Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201.

After *Bestpak* was decided, statutory changes were made with respect to the application of adverse inferences that reinforce the approach taken by Commerce in this case and the Federal Circuit's post-*Bestpak* jurisprudence. In *Bestpak*, the Federal Circuit cited

*Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F. 3d 1319,

1323-25 (Fed. Cir. 2010) to reject Commerce's separate rate. *Bestpak*,

716 F. 3d at 1379-80. In *Gallant Ocean*, the court found that adverse

rates must "represent commercial reality" and constitute a "reasonably

accurate estimate" of the actual dumping rates of the companies to

which the adverse rates are imputed. *Id.* at 1323-24.

But subsequently—and before the initiation of the review on

appeal here—Congress amended the adverse inferences provision of the

statute to clarify that Commerce has no obligation to ensure—"for any {}

purpose"—that adverse rates reflect "commercial reality" or the rate

that would have been calculated in the absence of the adverse inference.

19 U.S.C. § 1677e(d)(3); *see also* Trade Preferences Extension Act of

2015, Pub. L. No. 114-27, Title V, § 502 (2015). But Congress did not

alter 19 U.S.C. § 1673d(c)(5)(B) or otherwise indicate that it no longer

expects Commerce to use the "expected method" to determine the

margin for non-individually examined companies—even though the

expected method clearly contemplates imputing an adverse rate to such

companies. The legal calculus underpinning *Bestpak* has been

meaningfully altered by these developments. As a result, even if

14

Ct. No. 22-00092

Commerce had not shown that the rate applied to Green Farms reflects its commercial reality (which, for the reasons given by Commerce, it has), Commerce's decision to use the expected method to calculate Green Farms' rate would nevertheless be appropriate.

## IV.  **<u>CONCLUSION</u>**

Commerce's decision to apply the AFA rate to ESS is supported by substantial evidence, adequately explained, and in compliance with law. Likewise, Commerce's use of the expected method to calculate Green Farms' margin is adequately explained, supported by substantial evidence, and consistent with Congress' statutory directives. Accordingly, CFA respectfully requests that the Court uphold these determinations.

Ct. No. 22-00092

Respectfully submitted:

*/s/ Nazak Nikakhtar*
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.
Tatiana Sainati, Esq.

WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to the Catfish Farmers of America, et al.*

Dated: February 10, 2025

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that these comments comply with the word limitation requirement. The word count for the Catfish Farmers of America's Comments in Support of Remand Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,778 words.

<u>/s/ Nazak Nikakhtar</u>
(Signature of Attorney)

<u>Nazak Nikakhtar</u>
(Name of Attorney)

<u>Catfish Farmers of America, et al.</u>
(Representative Of)

<u>February 10, 2025</u>
(Date)

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

GREEN FARMS SEAFOOD JOINT
STOCK COMPANY,

                **Plaintiffs,**

    v.

UNITED STATES,

                **Defendant,**

    **and**

CATFISH FARMERS OF AMERICA,
*et al.*,

                **Defendant-
Intervenors.**

Before: Hon. M. Miller Baker,
Judge

Court No. 22-00092

## ORDER

Upon consideration of the comments filed by Plaintiffs Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA") regarding the October 18, 2024 remand results filed by the U.S. Department of

Commerce ("Commerce"), and all other papers and proceedings herein, it is hereby

**ORDERED**, that the October 18, 2024 remand results filed by Commerce are sustained insofar as those results pertain to the determination of the rate applied to East Sea Seafoods LLC and the calculation of Green Farms Seafood Joint Stock Company's margin.

**SO ORDERED.**


Dated: _____, 2025        _____
      New York, N.Y.                                 M. Miller Baker, Judge